**DISTRICT OF COLUMBIA DE-PARTMENT OF MENTAL HEALTH, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

No. 09–AA–882.

District of Columbia Court of Appeals.

Argued March 10, 2011.
Decided March 24, 2011.

Carl J. Schifferle, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for petitioner.

Michael A. Milwee, Senior Assistant Attorney General, for respondent.

Before FISHER and OBERLY, Associate Judges, and FERREN, Senior Judge.

FISHER, Associate Judge:

Following a hearing, the District of Columbia Department of Employment Services ("DOES") awarded temporary total disability benefits to an employee of the Department of Mental Health ("DMH") who claimed to have been injured on the job. DMH now challenges that decision, contending that DOES never ruled on DMH's motion to dismiss, which asserted that the employee's application for a hearing was untimely filed. DMH also argues that DOES applied the wrong standard of proof in determining that the employee's work activities caused her injury, and that

the evidence was insufficient to support that finding. We agree that DOES should have addressed the timeliness argument raised in DMH's motion to dismiss, and should have evaluated the employee's claim under the appropriate standard of proof. Accordingly, we reverse and remand for a new determination. We do not, therefore, decide whether the evidence would have been sufficient to support a ruling in the employee's favor.

## I.

### A. Factual Background

From 1974 until 2003, LaJuain Rogers was a food service worker at Saint Elizabeths Hospital. Her job duties included regularly "lift[ing] heavy pots"; "push[ing] large carts"; "wash[ing] dishes, pots, and pans"; setting up for meals; and mopping and sweeping floors. In the 1990s, Ms. Rogers began experiencing intermittent tingling and pain in her arms and hands, "sometimes" staying home from work as a result. In 2001, Dr. Sharon Baratz told Ms. Rogers that she had diabetes, and explained that diabetes could cause the pain in her hand. In April 2003, Dr. Baratz told Ms. Rogers that she had carpal tunnel syndrome.

On May 22, 2003, Ms. Rogers was attempting to lift a heavy pot at work when she experienced pain in her left hand which then shot up her arm. She put the pot down and rested, and then continued to work. A few days later, Ms. Rogers again experienced pain in her left hand and tingling in her left arm when she tried to pick up a heavy pot at work. She went to the Office of Employee Health, where a doctor advised her that she might have carpal tunnel syndrome and that she should seek workers' compensation. Soon thereafter, Ms. Rogers reported her condition to the Disability Compensation Program ("DCP").[1]

Ms. Rogers began seeing Dr. Hampton Jackson, an orthopedic surgeon, who told her she had bilateral carpal tunnel syndrome and advised her not to return to work. In October 2003, Dr. Jackson issued a report stating, "[s]ince [Ms. Rogers] cannot use her hand enough for work, it is my opinion that her carpal tunnel syndrome is causally related to her work activities and work injury associated with the accident of 5/22/03." In February 2005, Dr. Jackson reported that Ms. Rogers "asked me ... was I certain that her

---

1. Disability claims of District of Columbia employees are governed by the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code § 1–623.01 (2006 Repl. & 2009 Supp.), which establishes a system of compensation for the disability of an employee "resulting from personal injury sustained while in the performance of his or her duty." D.C.Code § 1–623.01 (2006 Repl.). To be entitled to compensation, an employee must give notice of the injury within thirty days. D.C.Code § 1–623.19(a) (2010 Supp.). At the relevant time, an employee was also required to file an original claim for compensation within three years of the injury. D.C.Code § 1–623.22(a) (2006 Repl.) (subsequently amended to require that the claim be filed within two years after the injury or death) (2011 Supp.). The District of Columbia Disability Compensation

Program ("DCP") then "determine[s] and make[s] a finding of facts and award for or against payment of compensation." D.C.Code § 1–623.24 (2010 Supp.). A claimant has the right to request reconsideration within thirty days after the decision is issued. If that request is timely made, the claimant is entitled to a hearing on the claim before a Department of Employment Services Administrative Law Judge. D.C.Code § 1–623.24(a–4), (b)(1) (2010 Supp.). If either party disagrees with the ALJ's decision, an application for review may be filed within thirty days after the decision is issued. D.C.Code § 1–623.28(a) (2006 Repl.). The ALJ's decision shall be affirmed "if supported by substantial competent evidence on the record." D.C.Code § 1–623.28(a) (2006 Repl.).

carpal tunnel syndrome could come from her diabetes, and I said yes I am." He continued, however: "There was significant flattening of the nerve and thickening of the transverse carpal ligament. This is of a traumatic origin. There was also tenosynovitis, but the thickened ligament and flattening of the nerve means it was not a metabolic cause; it was a traumatic physical cause of her carpal tunnel syndrome." In another report issued in July 2005, Dr. Jackson stated, "[c]ertainly my opinion is that [Ms. Rogers] continues to suffer from bilateral carpal tunnel syndrome that is occupationally related to her job and injury and/or, at least, aggravated by the injury of 5/22/03."

In August 2003, another orthopedic surgeon, Dr. Robert Smith, conducted an independent medical examination of Ms. Rogers and noted that "[h]er job appears to be quite varied and never involved one specific repetitive activity on a prolonged basis." Dr. Smith concluded that "it is highly unlikely that Ms. Rogers' complaints of hand pain are related to her job duties" and that "if she does have carpal tunnel syndrome it is more likely related to her diabetes and obesity than any activities performed during her employment."

A third orthopedic surgeon, Dr. David Johnson, conducted an independent medical examination in October 2003. Although Dr. Johnson noted that Ms. Rogers' job activities, "if done repetitively over and beyond what the patient is used to," could aggravate carpal tunnel syndrome, he ultimately concluded, "[n]evertheless ... I'm hard-pressed to attribute her current carpal tunnel syndrome to these work activities. She has other reasons for carpal tunnel syndrome, namely obesity and

diabetes, and these most likely are the proximate cause of her current symptoms." Dr. Johnson reached the same opinion during a follow-up examination in June 2005. He concluded that, although work activities like those performed by Ms. Rogers "can temporarily render more symptomatic a pre-existing carpal tunnel syndrome, ... in this particular case I do not believe that her work activities caused the carpal tunnel syndrome."

## B. The Proceedings Below

The DCP denied Ms. Rogers' disability compensation claim in October 2003. Basing its opinion on the reports of Dr. Smith and Dr. Johnson, the DCP concluded that her condition "was not caused by work-related activities." It also denied reconsideration of her claim in September 2004. Ms. Rogers then filed a timely application for a formal hearing of her claim with DOES, pursuant to D.C.Code § 1–623.23(b)(1) (2010 Supp.) (requiring that a request for a hearing be made within thirty days after the DCP's decision).

In December 2004, Ms. Rogers voluntarily withdrew that application, and the matter was dismissed without prejudice. She also voluntarily withdrew her second application in June 2005, and the matter was dismissed without prejudice again. In November 2005, Ms. Rogers' third application was dismissed without prejudice because she was not prepared to go forward to a formal hearing. On April 11, 2007, Ms. Rogers filed a fourth application and a formal hearing was scheduled for June 2, 2007.

Prior to the hearing, DMH moved to dismiss for lack of jurisdiction,[2] arguing

---

**2.** DMH has characterized the timeliness argument raised in its motion as a jurisdictional issue. We are not sure that it is. *See generally Henderson ex rel. Henderson v. Shinseki,* ——

U.S. ——, 131 S.Ct. 1197, —— L.Ed.2d —— (2011) (holding that some filing deadlines are jurisdictional and some are merely "claims-processing rules," and that a deadline will

that Ms. Rogers' most recent application for a hearing was untimely because it was not filed within a reasonable time after the dismissal of her previous application in 2005. At the hearing, an administrative law judge ("ALJ") heard argument on the motion to dismiss and decided to hold a full hearing "on both the issue of jurisdiction and the merits of the case." However, the hearing could not be completed that day. When the hearing reconvened on August 29, 2007, Ms. Rogers changed her claim to one for temporary total disability ("TTD") benefits rather than permanent partial disability ("PPD") benefits. The ALJ decided to start the hearing over, noting again that he would address the motion to dismiss in his decision.

The ALJ issued his Compensation Order on May 30, 2008, ruling that "there [was] sufficient evidence in the record to establish a causal connection between [Ms. Rogers'] carpal tunnel syndrome and her work activities," and granting her TTD benefits and causally related medical benefits. The ALJ noted that he gave "more weight" to the opinion of Ms. Rogers' doctor than to the opinions of the two doctors who performed independent medical examinations. The ALJ also stated that Ms. Rogers bore "the burden of producing substantial evidence that her carpal tunnel syndrome [was] causally related to her work injury." He did not mention the motion to dismiss in his order.

On June 30, 2008, DMH filed an application for review with the CRB, arguing, among other things, that the ALJ had failed to address its motion to dismiss. The CRB rejected this argument, concluding that the failure to determine the application's timeliness was not "reversible

error" because "[i]t is necessary for a Compensation Order to contain findings of fact on each material, contested factual issue ... [and here] [t]here was no material factual dispute regarding the dates of the [applications] or procedural history of the case." The CRB also rejected DMH's argument that the evidence did not support the determination that Ms. Rogers' work activities caused her disability, stating, "[w]e have reviewed the record and agree that the ALJ's factual findings are supported by substantial evidence on the record as a whole[.]"

## II.

### A. Our Standard of Review

We review decisions of the CRB to determine whether they are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Georgetown Univ. v. District of Columbia Dep't of Employment Servs.*, 971 A.2d 909, 915 (D.C.2009); *see also McNeal v. District of Columbia Dep't of Employment Servs.*, 917 A.2d 652, 656 (D.C.2007) (same) (citing D.C.Code § 2–510(a)(3) (2001)). We will "affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Georgetown Univ.*, 971 A.2d at 915; *see also* D.C.Code § 1–623.28(b) (the CRB's decision "shall be affirmed if supported by substantial competent evidence on the record"). We review an agency's legal rulings *de novo*, though we "will ordinarily give considerable weight to any reasonable interpretation

---

only be deemed jurisdictional if it is accompanied by clear legislative intent to that effect). Nevertheless, the crux of DMH's timeliness argument was clearly laid out in its motion,

and any imprecise use of the "jurisdictional" descriptor should not have impacted the ALJ's consideration of it.

by the agency of the statute it administers." *Daniel v. District of Columbia Dep't of Employment Servs.*, 673 A.2d 205, 207 (D.C.1996). However, we cannot uphold an agency decision "on grounds other than those actually relied upon by the agency." *District of Columbia v. District of Columbia Dep't of Employment Servs.*, 734 A.2d 1112, 1115 n. 3 (D.C. 1999) (citation omitted).

### B. The Motion to Dismiss

■ DMH first contends that the CRB's decision must be reversed because both the ALJ and the CRB failed to address whether Ms. Rogers' fourth request for a formal hearing was untimely filed, as DMH argued in its motion to dismiss. Citing the decision of a DOES ALJ in *Constance Ware v. Dep't of Corrections*, AHD No. PBL 96–083(c), Order at 2 (June 14, 2007), DMH asserted in its motion that Ms. Rogers submitted her fourth application so long after the dismissal of her previous application in 2005 that it could not be considered to have been filed "within a reasonable time after the issuance of a dismissal order without prejudice," as required. The ALJ never addressed this argument in his Compensation Order, and, in its order affirming that decision, the CRB held that this omission did not "rise to the level of reversible error" because "[t]here was no material factual dispute regarding the dates of [Ms. Rogers' applications] or the procedural history of the case." The CRB did not further address the timeliness issue.

■ "Our principal function 'in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues.'" *Georgetown Univ. Hosp. v. District of Columbia Dep't of Employment Servs.*, 916 A.2d 149, 151 (D.C.2007) (quoting *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.1972)). We agree with DMH that, by neglecting to address the timeliness question, both the ALJ and the CRB failed to resolve a material issue of law. Contrary to DOES's suggestion, moreover, we will not "assume that [an] issue has been considered *sub silentio* when there is no discernible evidence that it has." *Branson v. District of Columbia Dep't of Employment Servs.*, 801 A.2d 975, 979 (D.C.2002) (quoting *Washington Times v. District of Columbia Dep't of Employment Servs.*, 724 A.2d 1212, 1221 (D.C.1999)).

The argument raised by DMH's motion to dismiss was not, as the CRB characterized it, merely *when* Ms. Rogers' four applications were filed (which any cursory review of the docket would have revealed) but whether her fourth application could be deemed "timely" under D.C.Code § 1–623.22(a) even though it was filed more than a year after her most recent application for a hearing had been dismissed. *See Ware*, AHD No. PBL 96–083(c), Order at 2–4 (ruling that a hearing application filed more than two years after the dismissal of an employee's previous application was time-barred because there was "no evidence that [the employee] acted with any diligence to resolve" the issue, and the employer would be prejudiced if the application were permitted to go forward at such a late date).

That question required a decision applying both law and policy, one that the agency charged with administering the statute should have made in the first instance. *See Smith v. District of Columbia Dep't of Employment Servs.*, 934 A.2d 428, 437 (D.C.2007) (" 'Ordinarily, . . . this court will not attempt to interpret the agency's statute until the agency itself has done so.' ") (quoting *King v. District of Columbia Dep't of Employment Servs.*, 742 A.2d 460, 466 (D.C.1999)). For this reason,

even if the CRB did not wish to require the ALJ to do more than make findings of fact, the CRB should have decided the legal issue itself. We reverse the CRB's ruling, and remand for a decision that addresses the arguments raised in DMH's motion to dismiss.

### C. The Standard of Proof

 We are also obliged to remand for a second reason. DMH argues, and we agree, that the ALJ applied the wrong standard of proof to Ms. Rogers' claim.[3] Although "[i]n a workers' compensation case, we review the decision of the [CRB], not that of the ALJ[,] ... we cannot ignore the compensation order which is the subject of the Board's review." *Georgetown Univ. Hosp.*, 916 A.2d at 151 (citation omitted). "We will not affirm an administrative determination that 'reflects a misconception of the relevant law or a faulty application of the law.'" *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 992 A.2d 1276, 1280 (D.C.2010) (quoting *Georgetown Univ.*, 971 A.2d at 915). Because we agree with DMH that the ALJ appeared to apply the "substantial evidence" standard of proof to Ms. Rogers' claim, we hold that his order reflects a faulty application of the law that must be reversed.

 In workers' compensation cases where, as here, there is no presumption of compensability,[4] the burden of proof "falls on the claimant to show by a preponderance of the evidence that his or her disability was caused by a work-related injury." *McCamey v. District of Columbia Dep't of Employment Servs.*, 947 A.2d 1191, 1199 n. 6 (D.C.2008) (en banc) (citing *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 998 (D.C.2000)). In this case, however, the ALJ repeatedly referred to the less demanding "substantial evidence" standard in evaluating Ms. Rogers' claim. First, he began his discussion of the causal relationship issue by announcing that Ms. Rogers "bears the burden of producing substantial evidence that her carpal tunnel syndrome is causally related to her work injury." He continued: "Substantial evidence is defined as relevant evidence, which a reasonable mind, considering the record as a whole, might accept as adequate to support a conclusion that the asserted matter is true." Then, at two separate points, the ALJ framed his conclusion in terms of "substantial evidence," stating, "[c]laimant has shown by substantial evidence that she suffered an accidental injury arising out of and in the course of her employment on May 22, 2003," and "[c]laimant has presented substantial evidence that her disabling condition is causally related to her work injury." At no point in his reasoning did the ALJ mention the preponderance of the evidence standard.[5]

---

3. Because DMH did not specifically raise this issue with the CRB, DOES contends that it "is not properly before the Court ... and cannot serve as a basis for reversal." We are not persuaded. We are "'not obliged to stand aside and affirm an administrative determination which reflects a misconception of the relevant law.'" *Darden v. District of Columbia Dep't of Employment Servs.*, 911 A.2d 410, 418 (D.C.2006) (quoting *Jones v. District of Columbia Dep't of Employment Servs.*, 553 A.2d 645, 647 (D.C.1989)).

4. As the ALJ noted in his order, "an injured worker under the [CMPA] is not entitled to a presumption that there exists a causal relationship between his/her condition and the injury." *See Kralick v. District of Columbia Dep't of Employment Servs.*, 842 A.2d 705, 712 (D.C.2004) ("[T]he CMPA does not contain a ... presumption of compensability[.]").

5. Contrary to what DOES suggests, the fact that the ALJ found Ms. Rogers' testimony "credible" and gave "more weight" to Dr. Jackson's opinion than to the others does not

On this record, the only proper course is to reverse and remand for evaluation of Ms. Rogers' claim under the appropriate standard of proof. *See Washington Metro. Area Transit Auth.,* 992 A.2d at 1286 ("Because the ALJ did not make a preponderance finding, and because we cannot say that the evidence compelled a finding one way or the other, a remand is necessary, so that the ALJ can make the necessary finding."). The ALJ's error was not harmless, *see Golding–Alleyne v. District of Columbia Dep't of Employment Servs.,* 980 A.2d 1209, 1216 (D.C.2009) ("Merely presenting 'substantial evidence' to support [a] claim is not necessarily enough to carry the burden[.]"), and the case must be returned to DOES to consider anew the evidence that may bear on the causal connection between Ms. Rogers' condition and her work activities. For this reason, we do not address whether the evidence would have been sufficient to support a finding in the employee's favor.

### III. Conclusion

The judgment of the CRB is reversed and this matter is remanded for further proceedings not inconsistent with this decision.

*Reversed and remanded.*

demonstrate that the ALJ applied the correct standard of proof.