*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-1349

ROBERT B. JOHNSON, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, RESPONDENT.

On Petition for Review of an Order
of the District of Columbia
Board of Dentistry
(DEN-5788)

(Argued April 18, 2017                                    Decided July 13, 2017)

*Alan Dumoff* for petitioner.

*Adam Daniel* for respondent. *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Donna M. Murasky*, Senior Assistant Attorney General, were on the brief.

Before THOMPSON and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

Opinion for the court by *Associate Judge* THOMPSON.

Concurring opinion by *Associate Judge* MCLEESE at page 25.


THOMPSON, *Associate Judge*:   Petitioner Robert B. Johnson challenges the

October 29, 2015, Superseding Decision and Final Order (the "Superseding

Decision") of the District of Columbia Board of Dentistry (the "Board" or the

"D.C. Board") that revoked his license to practice dentistry in the District of Columbia. For the reasons set out below, we remand for the Board to reconsider the sanction it imposed.

## I.

On September 27, 2013, the Virginia Board of Dentistry (the "Virginia Board"), after conducting a two-day hearing, issued an order revoking petitioner's license to practice dentistry in Virginia. The order set out the Virginia Board's findings on charges against petitioner based on the treatment of twenty-two patients over the course of a decade. On June 18, 2014, the D.C. Board issued a Notice of Intent to Take Disciplinary Action ("NOI") based on the disciplinary action taken in Virginia.[1] Based on the Virginia Board's findings of fact, the NOI selectively charged petitioner with infractions in connection with the treatment of several patients in Virginia.

---

[1] *See* D.C. Code § 3-1205.14 (a)(3) (2012 Repl.) (providing that the D.C. Board "may take one or more of the disciplinary actions provided in subsection (c) of this section [including license revocation or suspension, reprimand, a civil fine, a course of remediation, a period of probation, or a cease and desist order] against . . . a person permitted by this subchapter to practice a health occupation regulated by the board in the District who . . . (3) [i]s disciplined by a licensing or disciplinary authority . . . of any jurisdiction for conduct *that would be grounds for disciplinary action under this section*" (italics added)).

The D.C. Board conducted a hearing on August 27, 2014, during which it heard testimony from government expert witness Dr. Robert Caldwell, D.D.S., petitioner, and a few of petitioner's former patients. The Board issued a Decision and Order on November 5, 2014 (the "Original Decision"), in which it adopted all of the Virginia Board's findings of fact, including findings relating to acts or omissions by petitioner that were not specified in the NOI, and revoked petitioner's license to practice dentistry in the District. Petitioner timely sought review of the Original Decision by this court. On July 16, 2015, this court granted a consent motion to remand the record for further proceedings "in light of [petitioner's original] brief[,]" which asserted that the Board had erred in a number of respects, primarily by failing to "limit[] its inquiry into the specific charges contained in the District's [NOI]" and by "failing to consider whether the conduct at issue in Virginia would have been grounds for taking disciplinary action in the District[.]"[2] Thereafter, on October 29, 2015, the Board issued its post-record-remand Superseding Decision, which is the subject of the instant review.

In the Superseding Decision, the Board adopted only those findings by the Virginia Board that were repeated in the NOI. After disposing of several pending

---

[2] The Board now agrees that "some of the fact findings in Virginia may be insufficient to form the basis of a finding of legal violation in the District."

motions (including a motion by petitioner to obtain information concerning a pending investigation by the Board into a complaint brought by a patient in the District of Columbia, which motion the Board denied), the Superseding Decision concluded that petitioner (who, the Board found, "practiced general dentistry and is a general dentist") committed (in Virginia) the following acts or omissions, which it found are grounds for discipline in the District of Columbia:

- On September 9, 2010, [petitioner] injected into Patient H's sinus area [certain] homeopathic substances[;]

- On March 10, 2008 and August 11, 2009, [he] administered a series of injections of unspecified substances to Patient J's sinus area without documenting the dental need for or diagnosis relating to such treatment;

- On August 18, 2010, [he] replaced the crown on Patient O's tooth #15 without documenting a diagnosis as to the reason for the replacement[;]

- [His] treatment record for Patient R from April 2008 to December 2010 does not contain an initial or updated health history[;]

- With respect to Patient T, from approximately 2003 to 2011, [his] records were devoid of an initial health history or subsequent updated history[;]

- [His] progress notes for Patient T end on July 22, 2009, but his billing for the patient indicates that he continued to provide treatment to her on multiple occasions after July 22, 2009[;]

- On September 26, 2005, [he] removed amalgam from Patient K's teeth #3, 4, 29, 30, and 31 without an adequate dental indication for doing so (or any diagnosis of mercury poisoning, allergy, or related condition by a medical doctor)[;]

- On September 23, 2009, [he] provided injections of procaine, methyl, and folic acid into Patient O's tonsils for pain. . . . [and] [t]here was no documentation of a dental diagnosis for this treatment[;][3]

- On July 29, 2009, [he] performed cranial myofascial therapy on Patient S without adequate dental diagnosis for doing so[;]

- [He] also [in 2009] removed amalgam from Patient S's teeth without an adequate dental indication for doing so (or any diagnosis of mercury poisoning, allergy or related condition by a medical doctor).[4]

The Board found that "any of" the above-described findings — relating to "practicing outside the scope of his dental license," "failing to conform to the standards of acceptable conduct and prevailing practice," and "failure to properly maintain records" as required by regulation in the District of Columbia — was "sufficient to warrant the imposition of disciplinary action" in the District of

---

[3] The NOI noted that petitioner "testified before the Virginia Board that he injected the tonsils because the tonsil area affects the head, neck, and facial areas."

[4] Based on the Virginia Board's findings, the NOI also charged that on August 18, 2010, petitioner "did not document in Patient O's treatment record the type of cement that was used to bond the crown that was placed on tooth #15," and, on December 22, 2009, "did not document in Patient O's treatment record the type of cement that was used to bond the crowns that were placed on [t]eeth [#]3 and 19." The D.C. Board heard no evidence about these two charges, and, in its Superseding Decision, reached no conclusion that they described conduct warranting discipline in the District of Columbia. Also, although petitioner's brief suggests otherwise, it does not appear that the Board drew any conclusion from the fact that the substances petitioner injected into Patient H's sinus area were homeopathic.

Columbia. Citing petitioner's devotion to a "holistic approach toward the practice of dentistry[,]" the Board also found "that there are no restrictions, fines, or courses that it could impose that would stop [petitioner] from crossing the line and engaging in practices that are beyond the scope of practice of dentistry and/or that fail to conform to the standards of acceptable conduct and prevailing practices of dentistry in the District of Columbia." Quoting petitioner's statement at the close of the hearing that he had "basically stopped doing" procedures when he learned that they were not acceptable in Virginia, the Board found that his testimony, which the Board called "disingenuous and self-serving," "implie[d] that he continued doing these procedures in some manner or form, as opposed to full-stop cessation[,]" a fact that the Board found "undermine[d] his statements that he would not engage in conduct if he knew that it was not permissible." The Board found that petitioner "knew or should have known that his conduct was not acceptable and that he chose to offer these services to his patients anyway." The Board explicitly did not credit, and found "implausible," petitioner's testimony to the extent that it "attempt[ed] to convince th[e] Board that he provided services different from the ones documented in his records."

The Board found that petitioner's recordkeeping is "unreliable" and that the Board "would be unable to trust the content of [petitioner's] records if it were to

allow [him] to continue to practice and to attempt to monitor his conduct through an audit of his records in the future[,]" and cited the "lack[] [of] any assurances that if allowed to maintain his dentist license . . . [petitioner] would not continue to practice beyond the scope of his District of Columbia license, fail to conform to the acceptable standards and prevailing practices of the profession, and fail to comply with the District's recordkeeping requirements." Finding "no lesser combination of sanctions . . . that would sufficiently protect the citizens of the District of Columbia from [petitioner's] impermissible dental practices[,]"the Board revoked petitioner's District of Columbia dental license. It noted that revocation means that he is not eligible to apply for reinstatement for five years.

In the brief in support of his petition for review, petitioner asserts that the only NOI charges that were sustainable were those involving documentation failures, and that the charges set out in the NOI with regard to scope of practice and standards of practice were based on actions or omissions that would not have been sanctionable in the District of Columbia. He further argues that the Board made "numerous errors of law, applying Virginia rather than District of Columbia legal standards," that the Board applied "vague practice standards," improperly limited the presentation of evidence, and improperly denied his motion to obtain the results of the Board's investigation into his complained-about conduct in the

District of Columbia. Finally, he contends that even if all the charges are sustainable, the Board "reached a sanction that cannot be supported by substantial evidence." Petitioner asserts that the Board, in issuing its Superseding Decision, primarily sought "to maintain the revocation," and "simply justify the prior result," rather than "begin the consideration . . . afresh"[5] after eliminating the defects in the Original Decision. "[T]hat error," he argues, "still pervades [the Board's] decision to use its most serious sanction." He contends that the sanction the Board imposed reflects its "negative reaction to his 'enthusiasm' about holistic dentistry" and "biologic dentistry,"[6] and exposes its willingness to decide the matter based on the full Virginia order "no matter the [differences between Virginia and District of Columbia law] or the evidence."

---

[5]   *Zhang v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 834 A.2d 97, 106 (D.C. 2003).

[6]   Petitioner explains that "[b]iological dentists adhere to principles that include mercury-free restorations and recognize the toxicity of mercury and care needed in its removal, a matter of great controversy[.]" As evidence of the "controversy," he cites, *inter alia*, 38 Md. Reg. 1615, 1616 (Dec. 2, 2011), a Maryland Department of Health and Mental Hygiene notice retracting a previous policy and stating that "a dentist who wishes to advertise that he or she practices 'mercury-free dentistry' or removes mercury amalgams for replacement with nonmercury-containing materials will be permitted to do so without a disclaimer" that acknowledges the federal Food and Drug Administration's position "that there is no causal link between dental amalgam and adverse health effects." Petitioner asserts that the Board "magnified" "Virginia's discomfort with mercury-free dentistry."

**II.**

We will reverse the Board's decision only if it is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  D.C. Code § 2-510 (a)(3)(A) (2012 Repl.).  "The [Board] must make findings on each material issue of fact; the factual findings must be supported by substantial evidence on the record as a whole; and the [Board's] conclusions must flow rationally from those findings and comport with the applicable law." *Williamson v. District of Columbia Bd. of Dentistry*, 647 A.2d 389, 394 (D.C. 1994) (internal citations omitted).  Our review for abuse of discretion means that we must determine "whether the decision maker failed to consider a relevant factor, [or] . . . relied upon an improper factor[.]"  *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979) (internal quotation marks omitted).  We recognize that "on questions of credibility[,] the fact-finding of hearing officers is entitled to great weight." *Arthur v. District of Columbia Nurses' Examining Bd*., 459 A.2d 141, 146 (D.C. 1983) (internal quotation marks omitted).  "We must be particularly deferential to the [Board's] determination where the decision lies within the agency's expertise[,]" and we are bound by factual findings "supported by substantial evidence on the record as a whole" even if we "may have reached a different result based on an independent review of the record." *Williamson*, 647 A.2d at 394.  We review an agency's legal

rulings *de novo.* *District of Columbia Dep't of Mental Health v. District of Columbia Dep't of Emp't Servs.*, 15 A.3d 692, 696-97 (D.C. 2011).

We recognize that "[a] licensing agency has broad discretion to suspend or revoke a license for reasonable cause in order to protect public health, safety, or morals[,]" and thus we review a sanction decision for abuse of discretion. *Arthur*, 459 A.2d at 147. As a general matter, "[w]here . . . a sanction is within an agency's statutory power to impose, an appellate court will not disturb the exercise of that discretion solely because that sanction is more severe than penalties levied in similar cases." *Kegley v. District of Columbia*, 440 A.2d 1013, 1020 n.11 (D.C. 1982).

## III.

Petitioner is correct that most of the instances of conduct charged in the NOI and determined by the Board to be grounds for discipline in the District of Columbia involved documentation failures (either no documentation of diagnosis, or patient records lacking initial or updated health histories).[7] To the extent

---

[7] Relying on Dr. Caldwell's testimony, the Board found that "replacing a crown without documenting a diagnosis, failing to maintain initial and updated

(continued…)

petitioner suggests that these "documentation failures" were merely minor infractions, we have no basis for accepting that claim. Deferring to the Board's expertise,[8] we accept its expressed view that recordkeeping infractions are not mere technical issues or minor violations, that proper recordkeeping practices are "essential for the continuity of care of a provider's patients" and "provide a window into the clinical judgment exercised at the time that the services were rendered," and that petitioner's omissions as found by the Virginia Board and set out in the NOI warrant reciprocal discipline. *Cf. Faulkenstein v. District of Columbia Bd. of Med.*, 727 A.2d 302, 308 (D.C. 1999) (concluding that there was "no warrant to disturb the Board's findings" where, *inter alia*, the evidence depicted Faulkenstein as having "a propensity for bad record-keeping" and the Board had grave doubts about his veracity).

---

(…continued)
patient health histories, and failing to maintain progress notes while continuing to provide treatment" were grounds for disciplinary action under D.C. Code § 3-1205.14 (a)(24) ("Violates any provision of this chapter or rules and regulations issued pursuant to this chapter") and 17 DCMR § 4213.4 (a). Section 4213.4 (a) provides that a "dentist shall maintain a record for each patient" that "[a]ccurately reflect[s] the evaluation and treatment of the patient[.]" Section 4213.4 (a)(2) states that the patient record "may include," *inter alia,* an "[u]pdated health history." Petitioner has not argued that the absence of updated health histories in his patient records was not a regulatory violation.

[8]    *See Williamson*, 647 A.2d at 395 (stating that a "determination that is peculiarly within the Board's expertise relating to the practice of dentistry . . . call[s] for particular deference").

We also cannot agree with petitioner that the only NOI charges that were sustainable were those involving documentation failures. For example, relying on testimony by Dr. Caldwell, the Board found, with reference to procedures the Virginia Board found petitioner performed on Patient H, that "inject[ing] a substance *into a patient's sinus*" (italics added) is not within the scope of the practice of dentistry in the District of Columbia and is a ground for disciplinary action under D.C. Code § 3-1205.14 (a)(21) (2012 Repl.) ("Performs, offers, or attempts to perform services beyond the scope of those authorized by the license held by the health professional").[9] Petitioner's claim of error with respect to the conclusion that he committed a scope-of-practice violation is that the Board's finding went beyond the finding of the Virginia Board, which used the phrase "into Patient H's sinus area," an ambiguous term that is consistent with the possibility (and petitioner's explanation) that the injection was into the part of the oral cavity near where the patient's (presumably ailing) tooth projected into the sinus. In his testimony before the D.C. Board, petitioner noted the "anatomical proximity of the sinus to the roots of the maxillar molars." In light of the Virginia Board's

---

[9] The Board also made this finding with respect to Patient J and stated in the NOI, in a paragraph that set out allegations about Patient J and Patient H, that "[t]hese actions would be prohibited . . . in that they are beyond the scope of your dental license." Factually, however, what the NOI asserted regarding Patient J is that petitioner administered injections into his sinus area "without documenting the dental need for or diagnosis relating to such treatment" infraction.

ambiguous wording of the finding as to Patient H, petitioner's explanation was not necessarily, as the Board characterized it, an effort to relitigate a fact resolved by the Virginia Board. Nevertheless, especially in light of the Virginia Board's additional usage of the phrase "into Patient . . . sinus area" when it found that petitioner performed an injection "into Patient D's sinus area to treat a sinus infection" (a matter not charged in the NOI), we are satisfied that the D.C. Board could reasonably infer that the Virginia Board's finding about Patient H was also about an injection into the sinus itself (which petitioner acknowledges "would have been outside the scope of his dental license"). *Cf. Williamson*, 647 A.2d at 394 ("Our function is to ascertain whether the inferences drawn by the administrative agency are within the reasonable boundaries prescribed by the facts." (internal quotation marks omitted)).

Further, the Board relied on Dr. Caldwell's testimony to find that petitioner engaged in conduct that "failed to conform to standards of acceptable conduct and prevailing practices within the practice of dentistry in the District of Columbia" within the meaning of D.C. Code § 3-1205.14 (a)(26) ("Fails to conform to standards of acceptable conduct and prevailing practice within a health profession"). That was the D.C. Board's conclusion about petitioner's use of procaine (which Dr. Caldwell testified "is not currently used in the practice of

dentistry in the District of Columbia" and his "performance of cranial myofascial therapy" "without an adequate dental diagnosis for doing so."  Petitioner argues with some force that the Virginia Board deems cranial myofascial therapy to be "quackery" and therefore would never find any "dental diagnosis" "adequate" to justify it (even though, he correctly asserts, Dr. Caldwell acknowledged that he performs such therapy and testified that it is not improper when supported by an adequate diagnosis).  However, even if we assume that the D.C. Board erred in treating the Virginia Board's finding pertaining to petitioner's performance of cranial myofascial therapy as a basis for discipline in the District of Columbia, we are still left with the Board's conclusion, supported by Dr. Caldwell's testimony, that petitioner's use of procaine would have been a deviation from acceptable dental practice in our jurisdiction and is a basis for discipline here.

The Board also relied on Dr. Caldwell's testimony that petitioner "failed to conform to standards of acceptable conduct and prevailing practices within the practice of dentistry in the District of Columbia" when he removed amalgam from the teeth of Patient K in 2005 "without an adequate dental indication for doing so (or any diagnosis of mercury poisoning, allergy, or related condition)"; Petitioner argues that it was unfair for the Board to infer that he made no diagnosis just because, as charged in the NOI, he failed to document a diagnosis in the patient's

record (and he asserts that he "always found defects in the amalgam removed"). We are satisfied, however, that to the extent the Board drew an inference of the absence of a dental diagnosis as to Patient K, it did not do so unreasonably. *Cf. Williamson*, 647 A.2d at 395 (holding that the licensing board's conclusion that "because there was no notation of a prescription in a patient's record[,] this indicated that the prescription was issued for a reason outside a legitimate medical purpose" was not arbitrary or capricious).

We do agree with petitioner, however, that the Board relied on legally insufficient evidence in concluding that his conduct in 2009, when he removed amalgam from the teeth of Patient S "without an adequate dental indication for doing so or any diagnosis of mercury poisoning, allergy, or related condition," was "conduct that would be grounds for disciplinary action in the District of Columbia." As petitioner notes, 17 DCMR § 4213.44, added in 2007 (*see* 54 D.C. Reg. 3514, 3520 (Apr. 20, 2007)), provides that "[a] dentist shall not remove amalgam restorations containing mercury from patients who are not allergic to mercury for the alleged purpose of removing toxic substances from the body, *when such treatment is performed solely at the recommendation or suggestion of the*

*dentist*." (italics added).[10]  Another regulation also added in 2007 contemplates that

a dentist might remove amalgam without a dental indication therefor if the dentist

has obtained "appropriate informed consent from the patient," which includes

advising the patient that "(a) [t]he National Institutes of Health has determined that

there are no verifiable systemic health benefits resulting from the removal of

mercury amalgam restorations; and (b) [t]he removal of sound or serviceable

mercury amalgam restorations may significantly affect the integrity of the tooth."

17 DCMR § 4213.45.  Prior to 2007, there was no D.C. regulation pertaining to

removal of amalgam.

As the D.C. Board acknowledged, the Virginia Board made no finding about

whether petitioner removed amalgam from the teeth of Patient S solely at

petitioner's suggestion or recommendation (and similarly made no finding about

whether the removal was with the patient's informed consent).  In the absence of a

finding that petitioner removed the amalgam without a dental indication therefor

and did so at his sole recommendation or suggestion (rather than, for example, at

---

[10]    By contrast, as petitioner points out, it appears that Virginia dental practice standards were more stringent, requiring that a dentist "[r]efrain from removing amalgam restorations from a non-allergic patient for the alleged purpose of removing toxic substances from the body." *Standards for Professional Conduct in the Practice of Dentistry*, Guidance Document 60-15, Virginia Board of Dentistry, http://www.dhp.virginia.gov/dentistry/dentistry_guidelines.htm (last visited April 27, 2017).

each patient's request), the Board had an inadequate basis for concluding that the Virginia infraction provided a basis for discipline in the District of Columbia. Dr. Caldwell's testimony that "removal of amalgam of a patient without adequate dental indication for removal [is] a basis for discipline of a dentist in the District of Columbia" was not a sufficient basis for the Board to apply a standard-of-practice limitation that went beyond that specified in § 4213.44, the standard-of-conduct regulation specifically addressing amalgam removal.

We also note that while the Board found two instances of sanctionable conduct (injections into the patients' sinus area) that it labeled scope-of-practice violations (but see note 9 *supra* regarding the factual allegation as to Patient J), it repeatedly emphasized Dr. Caldwell's testimony that injections into the tonsils (which petitioner was found to have done in the case of Patient O) are "not within the scope of *general dentistry practice* in the District of Columbia." (italics added). During the hearing, the Board Chair remarked that "[u]nder the laws of the District of Columbia[,] *general dentists* are not treating the tonsils." (italics added). The Board returned to the subject of tonsil injections in explaining its decision on what sanction to impose, referring to the "superior cervical ganglion" (which petitioner testified is "right behind the tonsil") and stating that petitioner "knew or should

have known that his conduct was not acceptable and that he chose to offer these services to his patients anyway."

Although the Board's decision does not formally treat the tonsil injections for Patient O as a scope-of-practice violation that was a basis for discipline in the District of Columbia, the Board's frequent mention of this leaves us with the impression that it was a significant factor in the Board's determination that reciprocal discipline was warranted. Yet, neither D.C. Code § 3-1201.02 (5) (2012 Repl.), which defines the "[p]ractice of dentistry,"[11] nor 17 DCMR § 4217, the regulation on "unauthorized [dental] practice," defines or uses the terms "general dentistry" or "general dentist" — meaning that Dr. Caldwell's testimony about the scope of "general dentistry" arguably lacks a legal anchor. Given Dr. Caldwell's acknowledgment that "[t]here are dentists who by skill or training or expertise in a certain area may go beyond what general dentistry does and that might include the tonsils[,]" and the absence of evidence that this practice is not "[c]ommonly used in dental practice in the United States" and "[c]urrently taught in [American Dental Association-accredited] United States dental schools or dental residency programs[,]" 17 DCMR § 4217.1 (b)-(c), we must agree with petitioner that the

---

[11] Section 3-1201.02 (5)(A) provides that the "[p]ractice of dentistry" includes, *inter alia*, "[t]he diagnosis, treatment, operation, or prescription for . . . condition[s] of the . . . adjacent tissues or structures of the oral cavity[.]"

Board, which charged the tonsil-injection incident as a lack-of-documentation-of-diagnosis violation, could not properly sanction it as an additional scope-of-practice violation. Uncharged conduct, even if it would constitute a violation of District of Columbia law, cannot form the basis for imposition of a sanction. *See* D.C. Code 3-1205.14 (a)(3).

## IV.

We now turn to petitioner's challenge to the sanction the Board imposed: license revocation, with the opportunity to apply for reinstatement only after five years. For two primary reasons, we conclude that we must remand this matter to the Board for reconsideration of the sanction.

The first reason relates to the fact that the Board imposed the sanction in a decision after a remand, to which it consented so that it could correct errors in its original analysis. In this circumstance, the Board "was bound to deal with the problem afresh, performing the function delegated to it[,]" *SEC v. Chenery Corp.*, 332 U.S. 194, 200-01 (1947), and it was obligated not to merely "redraft[] . . . [its] conclusions to . . . reinforce [its original] decision." *Ait-Ghezala v. District of Columbia Bd. of Zoning Adjustment*, 148 A.3d 1211, 1218 (D.C. 2016); *see also*

*Zhang*, 834 A.2d at 106 ("[W]e direct that the Board not simply justify the prior result, but rather begin the consideration of Zhang's application afresh in light of this decision."). We note that in the Original Decision, having adopted all of the Virginia Board's scores of findings (designated "a" through "kkkk"), the Board purported to impose a sanction "identical" to the sanction the Virginia Board had imposed (revocation). The Board endorsed the concept of discipline "mirror[ing] that imposed by the original disciplining jurisdiction[,]" explaining that it is "a helpful tool for the Board to consider that general legal principles support the adoption of an identical (or mirroring) sanction as the starting point."

By contrast, in the Superseding Decision, having concluded that discipline was warranted with respect to only a fraction of the Virginia Board's findings and with respect to only ten of the twelve Virginia Board findings recited in the NOI (*see supra* note 4), and without having heard any additional evidence that might justify a harsher sanction even on fewer sustained charges, the Board imposed the very same sanction it had imposed in the Original Decision (for what it then called "the staggering number of [petitioner's] conduct that constitute[d] violations of the District laws").[12] The Board did so even though, for example, it no longer cited (as

---

[12] The Board also recognized (in a footnote in the Original Decision) that petitioner's license revocation in Virginia means that he was barred from seeking

(continued…)

it had in the Original Decision), as a basis for discipline in the District, the Virginia Board's finding that the patient the Virginia Board referred to as "Patient I" had "suffered significant ["actual"] harm when his infection was not diagnosed and properly treated, forcing him to seek emergency care," and even though no finding of actual harm was entailed in any of the findings the Board concluded warranted disciplinary action here. We acknowledge that the Board was "free on remand to reach the same result on different grounds[,]" *City of Charlottesville v. Fed. Energy Regulatory Comm'n*, 774 F.2d 1205, 1212 (D.C. Cir. 1985) (internal quotation marks omitted), but these facts do not give us assurance that, on remand, the Board actually considered the sanction afresh.[13]

---

(…continued)

reinstatement for three years (*see* Va. Code § 54.1-2408.2), but did not explain in either of its decisions how the five-year waiting period for possible reinstatement in the District of Columbia is "identical" to or a "mirror" of the Virginia sanction (instead of, for example, a suspension with an opportunity to seek re-licensure after three years). *Cf. In re Olivarius*, 90 A.3d 1113, 1116 (D.C. 2014) (explaining that this court has sometimes, in attorney discipline cases, "impose[d] essentially the same discipline under a different label where it would be useful to do so" to effect functionally equivalent reciprocal discipline).

[13] Here, in arriving at its decision about what sanction to impose, the Board gave great emphasis to petitioner's remark, in his closing statement, that he had "basically stopped" doing services he had been performing when he "found out they weren't [acceptable] in Virginia," a statement the Board found implied that he continued to perform the services "in some manner or form." The colloquial phrase petitioner used during his closing statement possibly cannot bear the weight the Board assigned to it when, during his direct testimony, he had testified that "when it started to become apparent to me [that there was a problem with them in

(continued…)

We note in this regard that although the NOI charged petitioner with only a fraction of the charges that had been sustained by the Virginia Board, the D.C. Board was not precluded from considering petitioner's other Virginia infractions in considering what sanction to impose, especially to the extent that the Board viewed the Virginia findings as pertinent to petitioner's willingness to abide by the practice limitations and standards of this jurisdiction as one of its licensees.[14] That said, to the extent such infractions were not shown to be grounds for discipline in the District, we caution that they cannot properly be the driving force of the Board's sanction decision, lest the Board fail to adhere to the limitations of its authority under D.C. Code § 3-1205.14 (a)(3). The Assistant Attorney General properly recommended that "any sanction . . . be consistent with the violations that are stated and proved in the [NOI]."[15]

---

(…continued)
Virginia], I have not done sinus injections and tonsil injections" and that he had "not done any in DC." More to the point, however, the Board was aware of petitioner's "basically stopped" statement when it issued its Original Decision, yet made no mention of it at all.

[14] *Cf. Bradley v. District of Columbia*, 107 A.3d 586, 595 (D.C. 2015) ("We also afford a sentencing court considerable discretion in marshal[]ing the factual foundation for a sentence; a court may examine any reliable evidence, including that which was not introduced at trial, and may consider a wide range of facts concerning a defendant's character[.]" (internal quotation marks omitted)).

[15] In challenging the sanction the Board imposed, petitioner also asserts that the Board erred in denying his motion *in limine* "to obtain documentary

(continued…)

The second reason for remand is that our analysis above concludes that there was an insufficient basis for reciprocal discipline based on petitioner's removal of amalgam from Patient S's teeth, at least with respect to the 2009 infraction, and an insufficient evidentiary basis for (apparently) treating the tonsil injection as a scope-of-practice violation. Our case law establishes that "remand is required . . . if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed." *Arthur*, 459 A.2d at 146. "[U]nless we can be sure that the Board would have based its ruling on a lesser number [of bases for revocation than it found to exist,]" we cannot affirm. *Faulkenstein*, 727 A.2d at

---

(…continued)

evidence regarding [the Board's] investigation of [petitioner's] post-Virginia revocation practice in the District[.]" We decline petitioner's invitation to extend the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963), to this license-revocation matter. *See In re Fay*, 111 A.3d 1025, 1031 (D.C. 2015) (observing that while they are "quasi-criminal," "disciplinary proceedings are *not* criminal proceedings"). Moreover, it appears from the record that the Board's investigation was regarding a complaint by one patient, and it is not clear why anything in that narrowly-focused investigation would have revealed information favorable to petitioner about his general practices that would have addressed the Board's expressed concern about whether petitioner would, more generally, "completely cease" "practic[ing] beyond the scope of his District of Columbia license, fail[ing] to conform to the acceptable standards and prevailing practices of the profession, and fail[ing] to comply with the District's recordkeeping requirements." Accordingly, we do not require the Board to disclose the requested information, although it should reconsider its ruling if the requested information in fact supports appellant's representation (which the Board doubted) that he had ceased to engage in the practices charged in the NOI.

304 (quoting *Salama v. District of Columbia Bd. of Med.*, 578 A.2d 693, 700 (D.C. 1990)).

Given our disposition of this matter, we do not address petitioner's remaining arguments. But "[s]ince we must remand, we take this opportunity to point out certain deficiencies in the findings and conclusions of the [Board]." *Bakers Local Union No. 118 v. District of Columbia Bd. of Zoning Adjustment*, 437 A.2d 176, 180 (D.C. 1981); *see also Caison v. Project Support Servs., Inc.*, 99 A.3d 243, 250 (D.C. 2014). We have two points in mind. First, the Board faulted petitioner for not having "contacted the Board for clarification" if he "truly wanted to know what conduct was permissible" "prior to facing disciplinary action before this Board" (which, again, was based on his conduct *in Virginia*). At oral argument, counsel for the District of Columbia was unable to say whether the Board issues advisory opinions about whether certain practices are or are not permissible. The Board's criticism was misplaced if the Board would not have given an advisory opinion regarding petitioner's dental practice in Virginia.

Second, the Board stated that petitioner's "conduct and practice in the District" were not relevant to the Board's intent to take reciprocal action based on the Virginia revocation, thus reiterating a ruling that it made during the hearing and

that may reasonably have caused petitioner to limit his presentation. Yet, in explaining the sanction it chose, the Board faulted petitioner — unfairly, it seems to us — for failing to "address whether he has continued to remove amalgam without an adequate dental indication, to replace crowns without documenting a diagnosis, to perform cranial myofascial therapy without adequate dental diagnosis, or to fail to maintain appropriate records" in the District of Columbia.

## V.

This matter is remanded to the Board for it to reconsider the appropriate sanction in light of this opinion.

*So ordered.*

MCLEESE, *Associate Judge*, concurring in the judgment: I agree with the court that the case should be remanded for reconsideration of the sanction to be imposed. Although I agree with much of the court's analysis, I disagree on four points. I therefore concur in the judgment.

First, the court sets aside the Board's finding of a violation based on Dr. Johnson's injections into Patient O's tonsils. *Ante* at 17-19. In the court's view, that conduct was charged as a "lack-of-documentation-of-diagnosis violation" but impermissibly treated as a "scope-of-practice violation." *Ante* at 19. In fact, however, that conduct was charged as a failure "to conform to standards of acceptable conduct and prevailing practice," in violation of D.C. Code § 3-1205.14 (a)(26). Moreover, the Board sustained that charge, finding that the conduct reflected a "fail[ure] to conform to standards of acceptable conduct and prevailing practices."

The Board's reasoning seems to me sufficient to support the finding that Dr. Johnson's injections into Patient O's tonsils did not conform to standards of acceptable conduct and prevailing practices. In addition to noting that Dr. Johnson did not document a dental diagnosis for injecting Patient O's tonsils, the Board indicated that (a) one of the substances injected (procaine) is no longer used in dentistry because of unwanted side effects; and (b) Dr. Johnson was a general dentist who lacked specialized training about injection of the tonsils. It is true that the Board described injection of the tonsils as outside "the scope of general dentistry." I understand the Board to be explaining why Dr. Johnson's injections into the tonsils of Patient O were contrary to "standards of acceptable conduct and

prevailing practice," in violation of D.C. Code § 3-1205.14 (a)(26), not impermissibly finding an uncharged violation of D.C. Code § 3-1205.14 (a)(21) (prohibiting provision of services beyond the scope of those authorized by license).

Second, the court criticizes the Board's original decision for purporting to adopt a sanction that was identical to the sanction imposed in Virginia but that instead carried greater consequences – revocation with a five-year waiting period for possible reinstatement in the District compared to revocation with a three-year waiting period in Virginia. *Ante* at 19-20 & n.12. I see no basis for criticism of the Board's original decision, which adopted the same basic sanction of revocation while explaining that Virginia law permitted reinstatement after three years. Moreover, the Board in its original decision emphasized that it was not

> by any means obligated or compelled to accept the Virginia Decision. The Board reviews the Virginia Decision based on established precedents and reaches its own decision particularly as regards the questions of the District law and the ultimate sanction as, in its discretion, it believes appropriate in light of all relevant factors.

In any event, the reasoning of the Board's original decision is not relevant, because we are reviewing the Board's superseding decision, and that decision made clear that the Board was aware that revocation in the District would permit reinstatement only after five years.

Third, I do not share the court's concerns about the Board's decision to revoke Dr. Johnson's license even though the Board was considering only a subset of the violations found in Virginia. *Ante* at 20-22. As the court acknowledges, the Board permissibly considered Dr. Johnson's other Virginia infractions in deciding what sanction to impose. *Ante* at 22. Although the court states that the uncharged Virginia infractions cannot permissibly be the "driving force" behind the Board's sanction decision, *ante* at 22, I am unsure what that restriction means or what basis the court has for suggesting that the Board gave undue weight to the uncharged Virginia infractions.

Finally, the court expresses concern that the Board did not "actually consider[] the sanction afresh" on remand. *Ante* at 21. In its decision on remand, the Board explained at length its reasons for revoking Dr. Johnson's license. I see no reason to suppose that the Board was simply "redraft[ing] its conclusions to reinforce its original decision." *Ante* at 19 (ellipses, brackets, and quotation marks omitted). *See generally, e.g.*, *Darden v. District of Columbia Dep't of Emp't Servs.*, 911 A.2d 410, 416 n.3 (D.C. 2006) (noting "the presumption of regularity that attaches to the actions of Board members as official actions of public officers").