*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-AA-619 and 18-FS-760

R.O., PETITIONER,

v.

DEPARTMENT OF YOUTH REHABILITATION SERVICES, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Department of Youth Rehabilitation Services

IN RE R.O., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(DEL-1482-16)

(Hon. Robert D. Okun, Trial Judge)

(Argued October 25, 2018                              Decided January 17, 2019)

*Shilpa S. Satoskar*, Public Defender Service, with whom *Samia Fam*, *Amy Phillips*, and *Daniel Gonen*, Public Defender Service, were on the brief for petitioner-appellant.

*Janice Y. Sheppard*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Rosalyn Calbert Groce*, Deputy Solicitor General, were on the brief for respondent-appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: R.O. is in the custody of the Department of Youth Rehabilitation Services (DYRS) because he was found to have committed delinquent acts. R.O. challenges DYRS's decision to confine him in a secure residential facility. We vacate and remand for further proceedings.

## I.

Except as noted, the following facts appear to be undisputed. In May 2017, R.O. was committed to DYRS's custody until his twentieth birthday, based on determinations in two separate juvenile proceedings that he was involved in a robbery and an assault with significant bodily injury. In November 2017, R.O. and DYRS signed a community-placement agreement (CPA) that placed R.O. in a group home. In the CPA, R.O. agreed among other things to "[o]bey all laws, ordinances, rules and regulations of the District of Columbia and all its surrounding jurisdictions;" "[o]bey all school personnel;" "comply with all conditions of the GPS agreement" if placed on electronic monitoring; and have no new arrests.

In January 2018, R.O. was arrested for unlawful entry. R.O. was arrested again in February 2018, this time for armed carjacking. The following day, the Superior Court determined that R.O. had been arrested for carjacking without

probable cause. The charges against R.O. in the carjacking case were subsequently dismissed.

After the carjacking arrest, R.O.'s case manager, Jeffrey Hammond, recommended that R.O. be placed in a secure residential facility. In his recommendation, Mr. Hammond stated among other things that R.O. had been arrested for unlawful entry and carjacking, had been suspended from school, had missed school, and had failed to comply with the terms of his GPS monitoring agreement.

DYRS held a hearing to determine whether R.O.'s community placement should be revoked. The hearing took place before a panel of three DYRS employees. The panel heard evidence from two witnesses, neither of whom was placed under oath. DYRS's sole witness was Mr. Hammond. Mr. Hammond stated that R.O. had been arrested for carjacking, but Mr. Hammond acknowledged that a Superior Court judge had subsequently determined that there was no probable cause for the arrest. Mr. Hammond further acknowledged that, other than a police report alleging that a carjacking took place, DYRS did not have any evidence that R.O. had actually committed carjacking.

Mr. Hammond stated that R.O. had been arrested for unlawful entry. DYRS also submitted a police report alleging that R.O. had committed unlawful entry. Mr. Hammond stated that R.O. had acknowledged being aware that he had been barred from the area at issue. Mr. Hammond further stated that R.O. had been suspended from school for his involvement in an altercation with another youth. Finally, Mr. Hammond stated that R.O. had failed to keep his GPS device charged and had missed time at school. DYRS submitted records supporting Mr. Hammond's statements on the latter two points.

R.O. presented evidence from a defense investigator that Mr. Hammond had told R.O.'s mother that R.O. was the victim in the alleged altercation and had acted only in self-defense. Mr. Hammond denied making such a statement.

The DYRS panel issued a written decision concluding that R.O. had violated the CPA and placing R.O. in a secure facility. Specifically, the panel found that R.O. had violated the CPA in four ways: by being rearrested, by failing to obey school personnel, by failing to attend school regularly, and by failing to comply with the terms of his GPS agreement. R.O. appealed to the DYRS Director, who affirmed.

R.O. sought review in the Superior Court, by filing a "Motion for Appeal." The Superior Court ordered DYRS to respond, but DYRS did not do so. Shortly thereafter, the Superior Court sua sponte dismissed the case, concluding that R.O. was required to seek review directly in this court rather than in the Superior Court. R.O. appealed the trial court's ruling to this court and filed a protective petition for direct review in this court.

## II.

Although the trial court concluded that DYRS's decision was reviewable directly in this court, the parties now agree that in fact relief was appropriately sought in the Superior Court in the first instance. We must independently confirm that we have jurisdiction. *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1098 (D.C. 2015). We agree with the parties.

This court has jurisdiction to directly review orders of District of Columbia agencies only in contested cases. *Singleton v. District of Columbia Dep't of Corr.*, 596 A.2d 56, 56 (D.C. 1991); D.C. Code § 2-510 (a) (2012 Repl.). With exceptions not relevant here, a contested case is "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any

law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Code § 2-502 (8) (2012 Repl.). More specifically, a contested case is "(1) a controversy involving a trial-type hearing that is required by the agency's enabling statute, its implementing regulations, or constitutional right, and (2) which is an adjudicative, as opposed to a legislative, determination." *Mathis*, 124 A.3d at 1099 (internal quotation marks omitted).

"Whether an administrative proceeding is a contested case is a question of law." *Farrell v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 151 A.3d 490, 493 (D.C. 2017). Although we have said that we decide that question de novo, in some cases the answer to the question turns on the interpretation of statutes that an agency administers or regulations promulgated by an agency. *Id.* In such cases, deference to the agency's interpretation may be warranted. *Id. See generally, e.g.*, *Adgerson v. Police & Firefighters' Ret. & Relief Bd.*, 73 A.3d 985, 990 (D.C. 2013) (court will defer to agency's "informed interpretation of the statute it administers, . . . as long as that interpretation is reasonable and not plainly wrong or inconsistent with the statute's legislative purpose") (internal quotation marks omitted); *Placido v. District of Columbia Dep't of Emp't Servs.*, 92 A.3d 323, 326 (D.C. 2014) ("[T]he court generally defers to an agency's interpretation of its own

regulations unless that interpretation is plainly erroneous or inconsistent with the regulations.") (internal quotation marks omitted). We need not decide whether we owe deference to DYRS's conclusion that this is not a contested case, because we agree with that conclusion.

The proceeding before DYRS was "indisputably adjudicative" rather than legislative, because it determined the rights of a specific individual. *Mathis*, 124 A.3d at 1099. We conclude, however, that R.O. was not entitled to a trial-type hearing.

Youths have a number of procedural rights in connection with hearings on whether to revoke community placement. Those rights include the rights (1) to notice of the hearing, 29 DCMR § 1207.1 (2018); (2) to review certain evidence in DYRS's possession, 29 DCMR § 1207.2-.3; (3) to have counsel present, 29 DCMR §§ 1207.8, 1210.5 (2018); (4) to have DYRS provide witnesses who are within DYRS's control, 29 DCMR § 1210.9-.10; (5) to present witnesses, question witnesses, and challenge documents, 29 DCMR § 1210.11-.12; (6) to a preponderance-of-the-evidence standard, 29 DCMR §§ 1207.13, 1210.18; and (7) to written findings, 29 DCMR § 1211.1 (2018).

Nevertheless, the applicable regulations omit an essential attribute of a contested case: there is no requirement that witnesses be placed under oath, and in fact the witnesses in this case were not placed under oath. 29 DCMR §§ 1207, 1210, 1211; *Harrison v. District of Columbia Dep't of Human Servs.*, 472 A.2d 405, 406 (D.C. 1984) (per curiam) ("[S]worn testimony is required in contested cases . . . ."); *cf. Am. Univ. in Dubai v. District of Columbia Educ. Licensure Comm'n*, 930 A.2d 200, 207 n.18 (D.C. 2007) (in concluding that proceeding was not contested case, court relies among other things on absence of oath). The applicable regulations also do not provide, or provide in very limited form, other significant "accoutrements of a trial-type hearing." *Mathis*, 124 A.3d at 1099 (internal quotation marks omitted). There is no right to make opening or closing statements, 29 DCMR §§ 1207-11; pretrial discovery is limited, 29 DCMR § 1207.2-.3; and there is no general right to compulsory process, 29 DCMR §§ 1210.10 (DYRS is responsible only for presenting witnesses within DYRS's control), 1210.9 (except for witnesses under DYRS control, "the panel shall not be responsible in any way for providing witnesses on behalf of the youth whose case is being heard"). *See, e.g.*, *Mathis*, 124 A.3d at 1099 ("[A] trial-type hearing is one that incorporates due process protections such as representation by counsel, cross-examination of adverse witnesses, and fact-finding by an impartial adjudicator. The right to obtain pre-hearing discovery, and

to make opening and closing arguments[,] are other accoutrements of a trial-type hearing.") (citation, brackets, and internal quotation marks omitted).

We conclude that, considered as a whole, the procedures afforded by the applicable regulations "do not rise to the level of the full panoply of trial-type procedural rights needed to meet the requirements of a contested case." *Farrell*, 151 A.3d at 495 (internal quotation marks omitted); *cf., e.g.*, *Singleton*, 596 A.2d at 57 (prison-discipline hearing at which prisoner had right to notice, qualified right to call witnesses, and right to be represented by counsel was not contested case, because of limits on rights to present evidence, cross-examine witnesses, and obtain access to information relied upon by agency). We are not aware of any statutory provision affording youths additional protections in proceedings to revoke community placement. We need not fully decide the extent to which, if any, the Due Process Clause might provide youths with some additional procedural rights in such proceedings. Rather, it suffices for current purposes to note our agreement with the parties that any such additional protections would not rise to the level of the "full panoply of trial-type procedural rights" needed for a contested case. *Cf. Singleton*, 596 A.2d at 57 ("There is no constitutional right to a full trial-type hearing in prison discipline cases.").

Because this was not a contested case, R.O. correctly sought review in the Superior Court and could not directly seek review in this court. We therefore dismiss R.O.'s protective petition for review and exercise jurisdiction over R.O.'s appeal.

**III.**

DYRS contends that R.O.'s sole avenue of review in Superior Court was to seek a writ of habeas corpus. We disagree.

A party aggrieved by an agency action in a non-contested case ordinarily may seek review in the Superior Court. *In re A.T.*, 10 A.3d 127, 134 (D.C. 2010). In general, where the party is challenging agency action taken after a hearing, "[t]he Superior Court must apply the same level of review that this court uses when reviewing contested cases." *Id.* DYRS does not challenge these general principles, but rather argues that R.O.'s claim is a challenge to his detention and thus may be raised only by way of a habeas petition. *See* D.C. Code § 16-1901 (a) (2012 Repl.) (person detained in District of Columbia may challenge detention by filing petition for writ of habeas corpus).

We can assume without deciding for current purposes that R.O. could permissibly have filed a habeas petition rather than simply seeking review in the Superior Court of DYRS's administrative ruling. We see no basis, however, for a conclusion that R.O. was required to file a habeas petition. To the contrary, R.O. was required under well-settled principles to exhaust administrative remedies before seeking relief in habeas. *See Walton v. District of Columbia*, 670 A.2d 1346, 1353 (D.C. 1996) ("One of the requirements of habeas corpus jurisdiction is the exhaustion of administrative remedies."). Moreover, the applicable regulations expressly provide for judicial review of DYRS's decision to revoke community placement. 29 DCMR § 1211.9 ("The DYRS Director's final written determination may be appealed to the appropriate venue for review."). Given the exhaustion requirement and the provision for direct judicial review of DYRS's administrative ruling, we conclude that R.O. permissibly sought direct judicial review in Superior Court rather than proceeding by way of habeas.

In arguing that R.O. was required to file a habeas petition, DYRS relies on our decision in *Alston v. United States*, where we concluded that a prisoner challenging the computation of his sentence based on "new circumstances" could not seek relief under D.C. Code § 23-110 (1989), and instead was required to seek a writ of habeas corpus. 590 A.2d 511, 514 (D.C. 1991). *Alston* is readily distinguishable, however,

because our decision in that case rested on the conclusions that (1) § 23-110 is limited to challenges to the trial court's imposition of sentence; and (2) the prisoner's challenge was to the manner in which the sentence was being executed. *Id.* In the present, by contrast, there is a specific administrative process designed for R.O.'s claim, and R.O. permissibly sought judicial review of the resulting administrative determination, as directed by regulation.

## IV.

Because it ruled that it lacked jurisdiction to review DYRS's decision, the trial court did not review that decision on the merits. Ordinarily, we would remand for the trial court to conduct that review in the first instance. *See, e.g.*, *Newell-Brinkley v. Walton*, 84 A.3d 53, 61 (D.C. 2014) ("We choose not to decide that issue in the first instance, mindful that we are a court of review, not of first view.") (brackets, ellipsis, and internal quotation marks omitted). We nevertheless exercise our discretion to review DYRS's ruling in the first instance. In cases such as this "we review agency decisions on appeal from the Superior Court the same way we review administrative appeals that come to us directly." *Dupree v. District of Columbia Dep't of Corr.*, 132 A.3d 150, 154 (D.C. 2016). Moreover, this is an expedited matter involving a claim that a youth is being unlawfully detained. Under the

circumstances, "we decline to remand" for an initial ruling on the merits by the Superior Court. *In re A.T.*, 10 A.3d at 135.

Under the District of Columbia Administrative Procedure Act (DC APA), we review agency decisions to determine whether they are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." D.C. Code § 2-510 (a)(3)(A). "We affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009). As previously noted, the same standards apply in non-contested cases such as this. *In re A.T.*, 10 A.3d at 134-35.

In revoking R.O.'s community placement, DYRS concluded that R.O. violated the CPA by (1) being arrested for carjacking, (2) failing to obey school personnel, (3) being arrested for unlawful entry, (4) failing to attend school regularly, and (5) failing to comply with the terms of his GPS agreement. R.O. argues on appeal that it was unconstitutional for DYRS to revoke his community placement based on the carjacking arrest, given the judicial finding that there was no probable cause to believe that R.O. was involved in the carjacking. DYRS does

not dispute R.O.'s argument on this point, thereby conceding the issue for purposes of this appeal. *Coates v. Watts*, 622 A.2d 25, 27 (D.C. 1993) (by failing to contest issue in court of appeals, party "effectively conced[ed] it").

DYRS does argue that this court could appropriately affirm DYRS's decision notwithstanding DYRS's conceded constitutional error in relying upon the unsupported carjacking arrest. We conclude to the contrary. "Our case law establishes that remand is required if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed." *Johnson v. District of Columbia Dep't of Health*, 163 A.3d 746, 759 (D.C. 2017) (ellipsis and internal quotation marks omitted). "Unless we can be sure that the [agency] would have based its ruling on a lesser number of bases for revocation than it found to exist, we cannot affirm." *Id.* (brackets and internal quotation marks omitted). We have no grounds for assurance that DYRS's ruling would have been the same in the absence of consideration of the unsupported carjacking arrest. Both the initial panel decision and the Director's decision expressly relied on the carjacking arrest in explaining the decision to revoke R.O.'s community placement. In neither decision is there any explicit suggestion that the decision would have been the same in the absence of the carjacking arrest, and in our view neither decision reasonably implies

such a conclusion. We therefore vacate the decision revoking R.O.'s community placement.

At oral argument, DYRS contended that this court lacks the authority to vacate DYRS's order even if that order rests on an unconstitutional consideration. According to DYRS, vacating its order would cause R.O. to be restored to a community placement, and this court lacks authority to make placement decisions for youths committed to DYRS custody. We disagree with DYRS's reasoning for several reasons. First, although courts may not "specify the treatment provider or facility" for a youth in DYRS custody, they retain the authority to "modify a dispositional order" if a youth is not at the appropriate "level of placement." D.C. Code § 16-2323 (h) (2012 Repl.). Second, in contested cases this court has explicit statutory authority under the DC APA to "set aside" agency action that is "[c]ontrary to constitutional right." D.C. Code § 2-510 (a)(3)(B). As we have already noted, in non-contested cases such as this the courts apply the same standard of review as applies under the DC APA. *In re A.T.*, 10 A.3d at 134-35. It follows that the courts have the authority to set aside a DYRS decision that rests on a concededly unconstitutional consideration. Third, by vacating DYRS's order in his case, we do not direct R.O. to be placed with any particular treatment provider or in a particular facility. Rather, we remand this matter to the Superior Court, with instructions to

remand the matter forthwith to DYRS. *See, e.g.*, *Newell-Brinkley*, 84 A.3d at 60 (remanding case to Superior Court with instruction to remand to agency). In turn, DYRS must forthwith either provide R.O. with an appropriate community placement or issue a new order stating proper grounds for revocation of community placement. *Cf., e.g.*, *Kleinbart v. United States*, 604 A.2d 861, 872 (D.C. 1992) (vacating pretrial-detention order and remanding for trial court to hold immediate detention hearing at which court considered all relevant factors).

We address two remaining issues that are relevant to potential proceedings on remand. First, R.O. argues that the record lacks substantial evidence to support DYRS's conclusion that R.O. violated the CPA provision requiring him to obey school personnel. We agree. There was evidence that R.O. was suspended for being involved in an altercation at school. R.O. presented evidence that he was the victim in the altercation. Involvement in an altercation, whether as an instigator or as a victim, does not by itself imply, much less establish, a failure to obey school personnel. DYRS thus erred in basing its revocation decision in part on a conclusion that R.O. disobeyed school personnel.

Finally, R.O. argues that the three remaining grounds for the revocation order -- the unlawful-entry arrest, the school absences, and the GPS-monitoring violations

-- are insufficient to justify revocation.  We decline to decide that issue at this juncture.  DYRS did not attempt to justify detention based on those three grounds alone, and we thus do not have the benefit of DYRS's analysis of the issue.  In the absence of such an analysis, we are not prepared at this time to foreclose the possibility that revocation could reasonably be justified on the three remaining grounds for the revocation order.  If DYRS were to enter a new revocation order on those (or any other) grounds, R.O. would be free to seek expedited judicial review of that that order.

For the foregoing reasons, we dismiss the petition for review; vacate DYRS's decision; and remand the case to the Superior Court with instructions to remand the case to DYRS, for DYRS to forthwith either provide R.O. with an appropriate community placement or issue a new order stating proper grounds for revocation of community placement.

*So ordered.*